# Exhibit 5

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALLIED SYSTEMS HOLDINGS, INC., *et al.*,[1] | Case No. 12-11564 (CSS) |
| Debtor. | (Jointly Administered) |

**Hearing Date**: February 27, 2013 at 9:30 a.m. (EST)
**Objection Deadline**: February 18, 2013 at 5:00 p.m. (EST)

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE COMMITTEE TO PURSUE CERTAIN CLAIMS AND CAUSES OF ACTION OF THE DEBTORS' ESTATES

The Official Committee of Unsecured Creditors (the "Committee"), appointed in the above-captioned chapter 11 cases of Allied Systems Holdings, Inc. ("Allied"), Allied Systems, Ltd. (L.P.) ("Systems") and their U.S. and Canadian subsidiaries (collectively, the "Debtors," or the "Company"), by and through its undersigned counsel, respectfully moves this Court (the "Standing Motion") for an order authorizing the Committee to pursue certain claims and causes of action on behalf of the Debtors' estates against Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa American Alliance Fund II, L.P., Yucaipa American Alliance (Parallel) Fund II, L.P. (collectively, "Yucaipa"), Mark J. Gendregske ("Gendregske"), Jos Opdeweegh ("Opdeweegh"), James Frank ("Frank"), Derex Walker ("Walker"), Jeff Pelletier ("Pelletier"), Ira Tochner ("Tochner") and Joseph Tomczak

---

[1]    The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta, LLC (45-5215545); Axis Canada Company (87568828); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services, Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveaway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

("Tomczak," and collectively with Gendregske, Opdeweegh, Frank, Walker, Pelletier and Tochner, the "Allied Directors," and the Allied Directors together with Yucaipa, the "Defendants").[2]

## PRELIMINARY STATEMENT

1.      By this Standing Motion, the Committee seeks entry of an order authorizing it to commence and prosecute claims against Yucaipa – Allied's majority equityholder – for equitable subordination, recharacterization, breach of contract and specific performance (specifically relating to the Third Amendment, as defined below), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, preferential and fraudulent transfers, and disallowance of certain claims that Yucaipa may assert (collectively, the "Yucaipa Causes of Action"), and claims against the Allied Directors for breach of fiduciary duty and aiding and abetting breach of fiduciary duty (collectively, the "Allied Directors Causes of Action," together with the Yucaipa Causes of Action, the "Causes of Action").

2.      The rationale for the Committee, rather than the Debtors, to commence and prosecute the Causes of Action on behalf of the Debtors' estates is self-evident.  There are inherent conflicts that make it very difficult, if not impossible, for a company to vigorously pursue actions against its majority equityholder (and also the party that appointed, at a minimum, the majority of its current directors) and its current or former directors.  At the very least, third parties would likely question the vigor with which such suits would be prosecuted.[3]

3.      As detailed in *The Official Committee Of Unsecured Creditors' Complaint For (I) Equitable Subordination, (II) Recharacterization, (III) Breach Of Contract, (IV) Specific*

---

[2]      The Committee reserves its rights to pursue and/or seek standing against any defendants not named in the Complaint (as defined below).

[3]      Indeed, Yucaipa has consented to the Committee having standing to pursue the Causes of Action on behalf of the Debtors' estates.  *See* D.I. 822, 849.

*Performance, (V) Breaches Of Fiduciary Duties, (VI) Aiding And Abetting Breaches Of*

*Fiduciary Duties, (VII) Avoidance And Recovery Of Avoidable Transfers, And (VIII)*

*Disallowance Of Certain Claims* (the "Complaint"), attached hereto as Exhibit 1,[4] at bottom, the

Committee's allegations are about Yucaipa's efforts to take control over all facets of the

Debtors' capital structure in an effort to protect its equity investment and to frustrate the

legitimate rights of creditors of Allied.  In the process, Yucaipa trampled upon the legitimate

rights and expectations of the Debtors' secured and unsecured creditors and caused the Debtors

to make exorbitant and unnecessary payments to third parties acting at Yucaipa's direction and

for Yucaipa's benefit, not for the benefit of the Company or its stakeholders.

4.      Following Allied's first bankruptcy, Yucaipa took control of approximately 67%

of the outstanding equity of Allied and had the ability to name outright three of the five directors

on Allied's board of directors.  Practically, however, Yucaipa had the power to name all five

directors:  under the reorganization plan, Yucaipa had the power to name the Company's Chief

Executive Officer – and the fourth board member.  The fifth board member was to be selected by

the Creditors' Committee in the first Allied bankruptcy, but that appointee had to be "reasonably

acceptable" to Yucaipa.  Thus, even the two nominal "independent" directors were under

Yucaipa's control.  Accordingly, following Allied's emergence from its first bankruptcy,

Yucaipa controlled a super-majority of the Company's outstanding equity and effectively

controlled 100% of the board of directors.

5.      The Committee was appointed on June 20, 2012, pursuant to section 1102 of the

Bankruptcy Code.  The Committee consists of the Pension Benefit Guaranty Corporation;

---

[4]      The Complaint has been filed contemporaneously herewith, commencing the adversary proceeding captioned as *The Official Committee of Unsecured Creditors v. Yucaipa American Alliance Fund I, L.P., et al.*, Adv. Pro. No. 13-50530 (CSS) (Bankr. D. Del.) (D.I. 1).

Central States, Southeast and Southwest Areas Pension Fund; Teamsters Automobile

Transporters Industry Negotiating Committee; and General Motors LLC.

6.    Pursuant to section 1103 of the Bankruptcy Code and consistent with its fiduciary

duties, over the past seven months the Committee has undertaken a comprehensive investigation

of potential claims belonging to the Debtors' estates, including the review of thousands of pages

of documents obtained from the relevant parties.  Among other things, the Committee has

investigated the enforceability and propriety of any claims that Yucaipa may have in these

bankruptcy cases (the "Yucaipa Claims").  As a result of its investigation, the Committee has

come to the conclusion that the Yucaipa Claims are subject to equitable subordination and

recharacterization (in addition to the other Yucaipa Causes of Action), and the Committee has

commenced an action against Yucaipa, and certain other parties.  Additionally, as a result of its

investigation, the Committee has come to the conclusion that the Debtors' estates have additional

causes of action against Yucaipa, including, without limitation, claims for breach of the Third

Amendment, specific performance in connection with the Third Amendment, breach of fiduciary

duty, and aiding and abetting breach of fiduciary duty.

7.    During the course of its investigation, the Committee has also discovered that the

Debtors and their estates suffered significant prejudice arising from the Allied Directors' breach

of their fiduciary duties to the Company and to its stakeholders.  As set forth below and in the

Complaint, the Allied Directors breached their fiduciary duties by, among other things, failing to

act in the face of a known duty to act and acquiescing in Yucaipa's efforts to use the Company to

pursue Yucaipa's interests to the detriment of the Debtors' interests and the Debtors'

stakeholders' interests.

4

8.     In addition, Yucaipa itself breached its duties of good faith, loyalty, and care by controlling the Debtors for Yucaipa's benefit to the detriment of the Debtors and their stakeholders. These breaches stem from Yucaipa's desire to protect its own equity investment in the Debtors.

9.     To redress these violations, and in furtherance of its own fiduciary duties, the Committee hereby seeks standing to assert the Causes of Action on behalf of the Debtors' estates. The Complaint asserts well-established, legally cognizable claims with particularity and ample factual and documentary support. The Causes of Action for breach of fiduciary duty are brought under well-settled law that directors, officers, and controlling shareholders owe fiduciary duties to the corporation. *See, e.g.*, *In re World Health Alternatives*, 385 B.R. 576, 592-93 (Bankr. D. Del. 2008); *In re MAXXAM, Inc.*, 659 A.2d 760, 771 (Del. Ch. 1995); *Kahn v. Lynch Comm'cn Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994).

10.    The Causes of Action easily meet (and surpass) the "colorable" standard used by this and other bankruptcy courts in the standing context. *See, e.g.*, *In re Yes! Entertainment Corp.*, 316 B.R. 141, 145 (D. Del. 2004) (holding that derivative standing for creditors requires, among other things, "a colorable claim"); *In re Adelphia Comm'cns Corp.*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005) ("Caselaw construing requirements for 'colorable' claims has made it clear that the required showing is a relatively easy one to make."). Furthermore, the potential recoveries for the Debtors' estates are significant, and the cost of prosecution of the Causes of Action will be modest in comparison.

11.    The Committee therefore respectfully requests that the Court confer standing on the Committee to prosecute the Causes of Action on behalf of the Debtors' estates, as more fully set forth below and in the Complaint.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction of this Standing Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The relief sought herein may be granted under 11 U.S.C. §§ 105, 1103, and 1109.

## PROCEDURAL AND FACTUAL BACKGROUND

13.     On May 17, 2012 (the "Petition Date"), BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners LP (collectively, the "Petitioning Creditors") filed involuntary Chapter 11 petitions against Allied and Systems.  On June 10, 2012, Allied and Systems consented to the entry of an order for relief and the other Debtors filed voluntary petitions for relief.  On June 11, 2012, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

14.     On June 20, 2012, the United States Trustee for the District of Delaware, pursuant to Section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these chapter 11 cases.

15.     The facts alleged by the Committee in the Complaint, attached hereto as Exhibit 1, are incorporated herein by reference.

## THE COMMITTEE'S INVESTIGATION
## OF YUCAIPA AND THE COMMITTEE'S CLAIMS

16.     Following its appointment on June 20, 2012, the Committee began an investigation into the existence and viability of the Yucaipa Claims and potential causes of action arising out of Yucaipa's and the Debtors' actions leading up to the Petition Date, including

whether Yucaipa and/or the Allied Directors had breached their fiduciary duties and whether certain transfers were fraudulent and therefore subject to avoidance.

17.     During the course of its investigation, the Committee served informal discovery requests on Yucaipa and the Debtors and reviewed thousands of pages of documents that they produced, as well as numerous public filings and documents and transcripts from judicial proceedings that had been filed around the country related to Yucaipa's and the Debtors' actions. In addition to the review and analysis of documentary evidence, the Committee's counsel also participated in the Petitioning Creditors' depositions taken in the Debtors' chapter 11 cases relating to the Debtors' commencement of the adversary proceeding captioned *Allied Systems Holdings, Inc. v. American Money Management Corp., et al.*, Adversary Proceeding No. 12-50947 (CSS).

18.     In addition to the legal aspects of its investigation, the Committee's financial advisor, Conway MacKenzie, Inc., has identified, analyzed, and interpreted financial and industry data, projections, forecasts, and other materials related to the Yucaipa Claims.

## RELIEF REQUESTED

19.     By this Motion, pursuant to sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code and applicable case law, the Committee requests that the Court enter an order authorizing and appointing the Committee to commence and prosecute the Causes of Action against Yucaipa and the Allied Directors.  The Committee requires the requested relief to fulfill its fiduciary responsibilities, as mandated by Congress pursuant to sections 1103(c) and 1109 of the Bankruptcy Code.

## BASIS FOR RELIEF

### The Committee Should Be Granted Leave to Prosecute the Causes of Action

20.     Congress specifically authorized official committees to "investigate the acts,

conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's

business and the desirability of the continuance of such business, and any other matter relevant to

the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2).  Further, section 1103(c)(5)

provides that a committee may "perform such other services as are in the interest of those

represented." 11 U.S.C. § 1103(c)(5).  Section 1109(b) provides that a party in interest

(explicitly referencing a creditors' committee) "may raise and may appear and be heard on any

issue in a case under [chapter 11]." 11 U.S.C. § 1109(b).  These powers were provided to

official creditors' committees in order to aid the exercise of their fiduciary duty to maximize

recoveries for unsecured creditors.

21.     Pursuant to sections 1103 and 1109 of the Bankruptcy Code, the Committee

should be granted standing to commence and prosecute causes of action against Yucaipa and the

Allied Directors on behalf of the Debtors' estates.  In the first instance, a debtor in possession

has standing to prosecute claims on behalf of its estate. *See* 11 U.S.C. §§ 323, 544, and 1107.

However, the Third Circuit has recognized that a "straightforward application" of a bankruptcy

court's equitable powers allows for a grant of standing upon creditors' committees to sue

derivatively for the benefit of the estate. *See Official Comm. of Unsecured Creditors of

Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568, 580 (3d Cir. 2003)

(en banc) (holding that a bankruptcy court has the power to authorize creditors' committees to

pursue actions on behalf of debtors); *see also In re Yes!*, 316 B.R. 141, 145; *In re Polaroid

Corp.*, No. 03-56404, 2004 WL 1397582 (Bankr. D. Del. Jun. 22, 2004); *In re Valley Media,*

*Inc.*, No. 01-11353, 2003 WL 21956410 (Bankr. D. Del. Aug. 14, 2003); *In re Nat'l Forge Co.*,

304 B.R. 214, 221 (Bankr. W.D. Pa. 2004). Many other courts have found that an official

creditors' committee has an implied right to sue on behalf of a bankruptcy estate under the

Bankruptcy Code. *See Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *In re The Gibson Group,*

*Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233,

247 (5th Cir. 1988) (collecting cases); *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985).

22.     Generally, derivative standing requires: (1) a colorable claim, (2) the debtor's

unjustifiable refusal to pursue the claim (or, alternatively, a showing that a demand that the

debtor pursue the claim would be futile), and (3) the permission of the bankruptcy court to

initiate the action. *See In re Yes!*, 316 B.R. at 145. Each of these elements is met here.

### The Committee's Causes of Action are Colorable

23.     In Delaware, courts have eschewed line-by-line or claim-by-claim analysis of

proposed complaints in favor of a more general analysis of the import of what has been alleged

in order to determine whether a committee has a colorable claim. *See, e.g., In re Distributed*

*Energy Sys. Corp.*, No. 08-11101 (KG) (Bankr. D. Del. July 30, 2008), Transcript of Proceedings

at 6, 44 (noting that the colorability standard is less than a Rule 12(b)(6) standard and requires

only plausibility and that the claims be not "without merit"); *In re Fedders N. Am., Inc.*, No. 07-

11176 (BLS) (Bankr. D. Del. Mar. 24, 2008), Transcript of Proceedings at 97 (D.I. 933) (noting

that "the sufficiency of the allegations simply cannot be [held] to a Rule 12(b)(6) standard,

because we haven't even filed the complaint yet"); *see also In re Adelphia*, 330 B.R. 364, 376-77

(concluding that the burden of showing a "colorable claim" is a "relatively easy one" and that

"authorization should be denied only if the claims are 'facially defective.'").

24.     The allegations of the Complaint easily meet the colorable claim requirement.

A.    **The Complaint Pleads Colorable Equitable Subordination And Recharacterization Causes of Action**

25.    The Committee's equitable subordination and recharacterization causes of action are colorable.  While distinct claims, both equitable subordination and recharacterization "are grounded in bankruptcy courts' equitable authority to ensure 'that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'"  *In re SubMicron Systems Corp.*, 432 F.3d 448, 454 (3d Cir. 2006) (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)).  Equitable subordination applies "when equity demands that the payment priority of claims of an otherwise legitimate creditor be changed to fall behind those of other claimants," whereas "the recharacterization inquiry is whether a debt actually exists."  *Id.* (internal quotation marks omitted).

26.    As alleged in detail in the Complaint, attached hereto as <u>Exhibit 1</u> (the factual allegations of which are incorporated herein by reference), Yucaipa never intended to obtain Allied's debt as debt, but instead continually crafted schemes between Allied's first bankruptcy and the Petition Date to take control of all facets of Allied's debt structure in order to protect its equity investment.  These schemes involved repeated and persistent attempts by Yucaipa to eliminate the express limitations upon Yucaipa's acquisition of Allied's secured debt and ultimately led to amendments to the credit agreements governing Allied's First and Second Lien Facilities (as defined in the Complaint) and ultimately culminated in the purported "<u>Fourth Amendment</u>," dated August 21, 2009 to the Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (the "<u>First Lien Credit Agreement</u>").  As detailed in the Complaint, Yucaipa's only basis for its claim to holding Allied "debt" under the First Lien Credit Agreement is through the dubiously obtained Fourth Amendment, which – as Yucaipa acknowledges (Adv. Pro. No. 12-

50947 (Bankr. D. Del.), D.I. 65 at ¶ 88) – a court of competent jurisdiction has determined is void. Accordingly, and as further described in the Complaint, Yucaipa's secured claims should be (1) subordinated to all other claims asserted against the Debtors because Yucaipa's inequitable conduct resulted in injury to the Debtors' creditors as a whole and conferred an unfair advantage on Yucaipa, and (2) recharacterized as equity because numerous factors demonstrate that Yucaipa's acquisition of secured debt was in the nature of equity, not debt. Thus, the Committee has alleged colorable causes of action for equitable subordination and recharacterization.

**B.    The Complaint Pleads Colorable Breach Of The Third Amendment and Specific Performance Causes Of Action**

27.    The Committee has alleged a colorable claim that Yucaipa has breached the "Third Amendment"[5] to the First Lien Credit Agreement. As detailed in the Complaint, now that a court of competent jurisdiction has determined that the Fourth Amendment is void, the Third Amendment is the operative amendment to the First Lien Credit Agreement.

28.    Under the Third Amendment, among a host of other restrictions to and requirements attendant to Yucaipa's ability to acquire debt under the First Lien Credit Agreement, Yucaipa is obligated to make a capital contribution to Allied of at least 50% of the aggregate principal amount of the debt that it can acquire within ten days of acquiring such debt. Yucaipa purports to hold $145,112,547.06 of Allied debt under the First Lien Credit Agreement, but, as alleged in the Complaint, it has failed to make the requisite capital contribution of $57,356,044.33, representing fifty (50) percent of its purported Term Loan holdings under the

---

[5]    The Third Amendment refers to that certain Amendment No. 3 To Credit Agreement and Consent, dated as of April 17, 2008, to the First Lien Credit Agreement.

First Lien Facility. Thus, the Committee has alleged a colorable claim for breach of the Third

Amendment against Yucaipa.

29.    Moreover, under the Third Amendment, Yucaipa is permitted to hold no more

than $50 million of the principal amount of the First Lien Debt, and no Revolving Loans or LC

Deposit Loans. Even if Yucaipa is required to pay the requisite capital contribution of not less

than $57,356,044.33, Yucaipa would still purport to hold $7,356,044.33 more than it is permitted

to hold under the First Lien Credit Agreement, as amended by the Third Amendment. Yucaipa

also purports to hold $30,400,458.40 of LC Commitments, none of which it is permitted to hold

under the terms of the First Lien Credit Agreement, as amended by the Third Amendment. As

alleged in the Complaint, the Committee has no adequate remedy at law for the harm that will

continue to be caused by Yucaipa's continued breach of the First Lien Credit Agreement, as

amended by the Third Amendment, even if Yucaipa is required to make the requisite capital

contribution. Accordingly, Yucaipa should be required to divest itself of its purported Term

Loan holdings in excess of the $50 million of Term Loans under the First Lien Facility and its

purported LC Commitments under the First Lien Facility. Thus, the Committee has alleged a

colorable claim for specific performance against Yucaipa.

## C.    The Complaint Pleads Colorable Breach Of Fiduciary Duty And Aiding And Abetting Breach Of Fiduciary Duty Causes Of Action

30.    The Complaint alleges colorable claims of breach of fiduciary duty and aiding and

abetting breach of fiduciary duty against Yucaipa and the Allied Directors.

31.    It is well settled that the directors of a company owe fiduciary duties to that

company and, when the company is insolvent, to that company's creditors, and that company's

creditors have standing to pursue claims for breach of those fiduciary duties. *See, e.g., N. Am.*

*Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del.

2007) ("It is well settled that directors owe fiduciary duties to the corporation. When a corporation is *solvent*, those duties may be enforced by its shareholders, who have standing to bring *derivative* actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is *insolvent*, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.") (emphasis in original).

32.     Directors breach their fiduciary duty of loyalty when they "fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (citing cases). As alleged in the Complaint, the Allied Directors breached their fiduciary duty of loyalty and acted in bad faith by acquiescing in, failing to act to stop and ultimately supporting Yucaipa's efforts to use the Company to further its own interests and in detriment to the Debtors' stakeholders and creditors. Indeed, one of the most important duties of a director is to monitor the potential that others within the company will violate their duties, and the Allied Directors utterly breached that duty. *See ATR-Kim Eng Fin. Corp. v. Araneta*, No. CIV.A. 489-N, 2006 WL 3783520, at *19 (Del. Ch. Dec. 21, 2006).

33.     It is also well settled that a "shareholder that owns a majority interest in a corporation, or exercises actual control over its business affairs, occupies the status of a fiduciary to the corporation and its minority shareholders." *In re MAXXAM, Inc.*, 659 A.2d 760, 771. As alleged in the Complaint, the facts here demonstrate that Yucaipa has owned a majority, indeed a super-majority, interest in Allied and has long exercised actual control over its business affairs.

Accordingly, Yucaipa has owed, and does owe, a fiduciary obligation to Allied and its stakeholders.

34.    In addition to its ability to control Allied by wielding at least 67% voting power, Yucaipa exercised further improper influence by requiring the Debtors to enter into a consulting agreement with Yucaipa as of May 29, 2007.  As alleged in the Complaint, through this "Monitoring and Management Services Agreement," Allied was induced to and did repose confidence in Yucaipa's superior knowledge and expertise to advise it, engaging Yucaipa with the expectation that it would respond in honest dealings with Allied's best interest in mind. Instead, Yucaipa engaged in a self-serving campaign that extracted unnecessary and unreasonable fees from Allied and acted to ensure that Yucaipa and its interests would be served before the interests of Allied and its creditors.  Abandoning its fiduciary obligations, Yucaipa failed to deal honestly with the Debtors.

35.    Yucaipa's "multifaceted" relationship with Allied placed Yucaipa in a position of "higher trust" such that it owed a duty to Allied and was "obligated" to "act in the best interests of the Debtors."  *See In re Oakwood Homes Corp.*, 340 B.R. 510, 519 (Bankr. D. Del. 2006). Instead of fulfilling that duty, however, Yucaipa engaged in inequitable conduct with regard to the Debtors and the Debtors' creditors.  Yucaipa abused its position of trust and control over the Debtors by causing Allied to make payments with an eye towards ensuring Yucaipa's own financial health in the event of an Allied bankruptcy, without regard to whether Allied succumbed to financial ruin and its creditors were left unpaid.

36.    The Complaint also pleads colorable causes of action for aiding and abetting a breach of fiduciary duty against Yucaipa and the Allied Directors.  An aiding and abetting breach of fiduciary duty claim is pleaded where the complaint alleges:  (1) the existence of a fiduciary

relationship; (2) a breach of that fiduciary's duties; (3) another defendant knowingly participated in the breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary. *See Globis Partners, L.P. v. Plumtree Software, Inc.*, No. Civ. A. 1577-VCP, 2007 WL 4292024, at *15 (Del. Ch. Nov. 30, 2007).

37.     As the Complaint alleges, each of the Allied Directors and Yucaipa was a knowing participant in the other parties' breaches of their fiduciary duties to the Debtors and the Debtors' creditors. The Allied Directors were each well aware of Yucaipa's motivations to protect its equity investment, and Yucaipa was aware of the Allied Directors' acquiescence in its scheme to put its own interests ahead of the interests of Allied and its creditors. As detailed in the Complaint, the Allied Directors knowingly aided and abetted Yucaipa's persistent efforts to take total control over the Debtors' capital structure in an effort to protect Yucaipa's equity investment over the rights of Allied's creditors. Furthermore, as detailed in the Complaint, Yucaipa knowingly aided and abetted the Allied Directors in breaching their fiduciary duties to Allied and its stakeholders, by causing the Allied Directors to fail to fulfill their obligations to ensure that Yucaipa was not able to succeed in its persistent and cynical scheme to take total control over the capital structure of Allied.

38.     Thus, the Committee has alleged colorable claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against the Defendants.

**D.     The Complaint Pleads Colorable Preferential And Fraudulent Transfer Causes Of Action**

39.     The Complaint alleges colorable claims for preferential and fraudulent transfers. The law concerning preferential and fraudulent transfers that may be avoided pursuant to sections 544, 547 and 548 of the Bankruptcy Code is well settled, and the Complaint sets forth how each transfer or obligation satisfies the applicable standard. *See* 11 U.S.C. §§ 544, 547,

548.  Since the transfers alleged in the Complaint to be avoidable were made (i) to Yucaipa as

the initial transferee, (ii) for Yucaipa's benefit, or (iii) to Yucaipa as the immediate or mediate

transferee of the initial transferee, the alleged transfers can be recovered from Yucaipa.  11

U.S.C. § 550.  Thus, the Committee has alleged colorable preferential and fraudulent transfer

claims against Yucaipa.

**E.      The Complaint Pleads A Colorable Disallowance Claim**

40.      Finally, the law concerning disallowance claims pursuant to section 502(d) of the

Bankruptcy Code is well settled, and is plainly implicated by the alleged preferential and

fraudulent transfers.  Thus, the Committee has alleged a colorable disallowance claim.

**The Debtors Unjustifiably Refused to Bring the Causes of Action And
Any Demand by the Debtors to Bring such Causes of Action Would Be Futile**

41.      Generally, the second factor in a court's decision to confer derivative standing on

a creditors' committee is whether the debtors have unjustifiably refused to bring the claims on

behalf of the estate or if demanding that the debtors do so would be futile.  *See, e.g.,*

*Cybergenics*, 330 F.3d at 574 ("courts and commentators have acknowledged that the debtor-in-

possession often acts under the influence of conflicts of interest," and "the real losers are the

unsecured creditors whose interests avoidance actions are designed to protect") (internal

quotation marks omitted).

42.      The second factor clearly supports conferring standing upon the Committee.  In

determining whether a debtor's refusal (or presumed refusal) to bring an action is unjustified,

courts examine whether the claim is likely to benefit the estate.  *In re STN*, 779 F.2d 901, 905

(explaining that the court's inquiry need not be a "mini-trial").

43.      There is no valid reason for the Debtors to refuse to bring the foregoing Causes of

Action.  The benefit to the Debtors' estates is clear because the recoveries from the Causes of

Action could be in the millions of dollars. Such proceeds would inure to the benefit of secured and unsecured creditors of the Debtors' estates. Absent prosecution of the Causes of Action, the unsecured creditors may face very little in the way of recoveries in these cases. This tips the scale further in favor of granting this motion. *See, e.g., In re Distributed Energy Sys. Corp.*, No. 08-11101 (KG) (Bankr. D. Del. July 30, 2008), Transcript of Proceedings at 45 (determining that where unsecured creditors' recovery is uncertain, the showing concerning "potential recovery versus the cost" is "reduced"). Here, costs incurred in pursuit of these claims will pale in comparison to recognizable value, even discounting the potential value for the inherent uncertainty of litigation.

44.    Furthermore, the Committee has not formally demanded that the Debtors themselves prosecute the Causes of Action because the Committee believes such a demand would be futile given the Debtors' inherent conflict of interest in suing their own directors and Yucaipa, which is, among other things, Allied's controlling shareholder, DIP Agent under the Debtors' postpetition secured DIP financing (D.I. 230), and the party empowered to appoint Allied's directors.

45.    The Debtors have long been aware that the Committee was undertaking an investigation of the matters surrounding the activities of Yucaipa in connection with Debtors' First Lien and Second Lien Credit Facilities, which relate directly to the Causes of Action and have been described at numerous points in this bankruptcy case and prior litigation as set forth in the Complaint. *See, e.g.*, D.I. 13, 193, 574. On January 23, 2013, the Committee delivered a letter, attached hereto as Exhibit 2 (the "Demand Letter") to the Debtors notifying them that the Committee's investigation has led to the conclusion that the Causes of Action are valid claims

that the Committee intends to pursue.  The Debtors have not formally responded to the

Committee's Demand Letter.

46.     As such, the Debtors were in no way prejudiced by the Committee's decision not

to formally request that suit be filed by the Debtors directly.  A formal request upon the Debtors

to themselves prosecute the Causes of Action would have been futile given the numerous

conflicts the Debtors have with the Defendants and the Debtors' long-standing knowledge of the

matters relating to the Causes of Action.  *See, e.g., In re Nat'l Forge Co.*, 326 B.R. 532, 544-45

(W.D. Pa. 2005) (affirming the bankruptcy court's excusal of the committee's failure to petition

the debtor on the ground that any request to file suit would have been futile); *In re G-I Holdings,*

*Inc.*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004) ("It cannot be said that a formal request, in order to

obtain a formal refusal, a request which would surely be refused, should be required."); *In re*

*First Capital Holdings Corp.*, 146 B.R. 7, 13 (Bankr. C.D. Cal. 1992) (creditors' committee

would be excused from making a demand on a debtor to pursue action against its officers and

directors since such a demand would be futile).

47.     Under the circumstances extant here, the determination of whether the pursuit of

litigation by the Committee would benefit the estate is, "to be blunt about it, an easy one." *In re*

*Adelphia*, 330 B.R. at 384.

**The Committee Is Seeking Court Approval To Bring The Causes Of Action**

48.     In this Standing Motion, the Committee seeks approval from this Court to pursue

the Causes of Action.  This final factor is thus satisfied by the relief sought herein.

**NO PRIOR REQUEST**

49.     No prior request for the relief sought herein has been made to this or any other

court.

## NOTICE

50.    Notice of this Standing Motion has been given to (a) the U.S. Trustee; (b) counsel for the agent for the Debtors' debtor-in-possession lenders; (c) counsel for the Debtors; (d) counsel for CIT, as resigning agent under the Debtors' First Lien Facility, (e) counsel for the Petitioning Creditors; (f) counsel for The Bank of New York Mellon, in its capacity as administrative agent and collateral agent under the Debtors' second lien credit agreement; and (g) all other persons requesting notices pursuant to Bankruptcy Rule 2002.  The Committee submits that such notice is sufficient and that no further notice of the relief requested in this Standing Motion is required.

## CONCLUSION

51.    Courts have reasoned that unsecured creditors' committees are likely the best-suited party to pursue derivative suits on behalf of bankruptcy estates given that they are the "real losers" whose interests avoidance actions serve to protect.  *Cybergenics*, 330 F.3d at 573. Here, granting derivative standing to the Committee to prosecute the Causes of Action squarely serves the equitable concerns articulated by the Third Circuit and will protect the interests of the Debtors' unsecured creditors.

WHEREFORE, the Committee respectfully requests that the Court (i) enter an order, substantially in the form attached hereto as Exhibit 3, authorizing the Committee to prosecute the Causes of Action against the Defendants and grant the relief requested herein; and (ii) grant such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
February 1, 2013

**SULLIVAN HAZELTINE ALLINSON LLC**

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Seth S. Brostoff (No. 5312)
901 N. Market St., Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile:  (302) 428-8195

**SIDLEY AUSTIN LLP**
Michael G. Burke
Nicholas K. Lagemann
Cameron Moxley
Dennis Kao
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599

*Counsel for The Official Committee of Unsecured Creditors*