# Exhibit 9



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **ALLIED SYSTEMS HOLDINGS, INC., *et al.*,**[1] | ) | **Case No. 12-11564 (CSS)** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | **Hearing Date: September 17, 2013** |
| | ) | **at 11 a.m.** |
| | ) | **Re: Docket Nos. 1175, 1320** |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the Motion (docket no. 1175) (the "Sale Motion") of the above captioned debtors

and debtors-in-possession (collectively, the "Debtors" or "Sellers") for, among other things, the

entry of an order pursuant to §§ 105, 363, and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") (a) authorizing the Debtors to:    (i) enter into an asset

purchase agreement with the party submitting the highest or best bid for the Debtors' assets in

---

[1]      The Debtors in this Chapter 11 Case, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta, LLC (45-5215545); Axis Canada Company (87568828); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services, Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

connection with the Debtors' sale and bidding process; (ii) sell the Purchased Assets,[2] which include substantially all of the Debtors' assets, free and clear of all Liens (as used in this Order, the term "Liens" shall have the meaning ascribed to it below) with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume and sell and assign certain executory contracts and unexpired leases; and (b) granting related relief; and this Court having entered an order on June 21, 2013 (docket no. 1320) (the "Bid Procedures Order") authorizing the Debtors to conduct, and approving the terms and conditions of, an auction (the "Auction") as set forth in the Bid Procedures Order to consider offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain bid procedures (the "Bidding Procedures" approved pursuant to the Bid Procedures Order) to be used in connection with the Auction; (ii) the form and manner of notice of the Auction and Bidding Procedures; and (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and the Court having established the date of the hearing on the Sale Motion (the "Sale Hearing"); and the Auction having been held on August 14 and 15, 2013; and at the conclusion of the Auction, the Debtors having determined that New Allied Acquisition Co. LLC ("New Allied"), a Delaware entity established by the Prepetition First Lien Agents (as defined in the Bid Procedures) submitted the highest and/or best bid for the Purchased Assets; and the Sale Hearing having been postponed on August 20, 2013 to September 10, 2013; and on September 3 and 4, 2013, certain objections or joinders thereto were filed by, among others: (i) Jack Cooper Holdings Corp. (together with its successors and assigns, the "Purchaser")[3], (ii)

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement, dated September 12, 2013, between the Purchaser and the Debtors (the "Agreement").

[3]     Any reference herein to the Purchaser shall also be deemed a reference to the appropriate Designated Purchaser, if any.

RLF1 9376545v.2

National Automobile, Aerospace, Transportation and General Workers CAW-Canada of Canada, (iii) the Teamsters National Automobile Transporters Industry Negotiating Committee, (iv) Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund, (v) the official committee of unsecured creditors appointed in the Chapter 11 Case (the "Committee"), and (vi) Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa American Alliance Fund II, L.P, and Yucaipa American Alliance (Parallel) Fund II, L.P. (collectively, the "Objecting Parties") to the sale of the Debtors' assets to New Allied (including any such informal objections raised, collectively, the "Sale Objections") (docket nos. 1723, 1724, 1730, 1731, 1734, 1735, 1736, and 1754); and the Purchaser having submitted a revised bid on September 6, 2013 to the independent Special Committee of the Debtors' Board of Directors; and the Committee having filed its Motion to Reopen the Auction to the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Interests (the "Motion to Reopen") (docket no. 1769) on September 6, 2013; and the Sellers having filed their response and joinder to the Motion to Reopen on September 8, 2013 (docket no. 1772); and this Court having held a conference with counsel for certain of the Objecting Parties, Debtors, and the Prepetition First Lien Agents on September 9, 2013, at the conclusion of which the Court ordered that the Auction be re-opened on September 11, 2013 at 2 p.m.; and the re-opened Auction having taken place on September 11 and 12, 2013, at the conclusion of which, the Debtors declared (i) the Purchaser's final bid the "highest or best" bid for the Purchased Assets, and (ii) New Allied's bid the "highest or best" bid for certain assets excluded from the Purchaser's final bid; and the Sale Hearing having taken place on September 17, 2013; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and

- 3 -

1334; and in consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and all other pleadings and proceedings in this Chapter 11 Case, including (without limitation) the Sale Motion, the certificate of service regarding the Sale Motion (docket no. 1399), and the Sale Objections; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, their other stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement, and the disposition of the Sale Proceeds (as defined herein) pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).  Venue of this Chapter 11 Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

- 4 -

D.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

E.     The statutory bases for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 362, 363 and 365, and (ii) Bankruptcy Rules 2002, 4001, 6004, 6006, and 9014.

F.     On May 17, 2012 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

G.     As evidenced by the certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, and the transactions contemplated by the Agreement (the "Transactions") has been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, the local rules of the Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Order.  The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract or lease listed on the Notice of Debtors' Intent to Assume and Assign Certain Leases and Executory Contracts and Fixing of Cure Amounts filed on July 15, 2013 (as amended, the "Contract Notice") (docket no. 1431) to each

- 5 -

non-debtor party under each such contract or lease.[5]  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, the Transactions, the assumption and assignment of the Assigned Contracts, or of the entry of this Order is necessary or shall be required.

H.      Notice and a reasonable opportunity to object and/or be heard regarding the Sale Motion, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, the Transactions, the assumption and assignment of the Assigned Contracts, and the entry of this Order have been provided to all interested Persons, including, without limitation, (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (d) the United States Environmental Protection Agency and all state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (e) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of the filing of the Sale Motion; (f) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (g) all Attorneys General for the states in which the Debtors conduct business; (h) all potential bidders previously identified or otherwise known to the Debtors; and (i) all parties listed on the Main Service List, the Supplemental Service List (Pensions) and the Supplemental Service List (Government Tax / Environmental Agencies) in the Canadian recognition proceeding.

---

[5]      The Contracts listed in the Contract Notice that are included in the Purchased Assets are referred to in this Order as the "Assigned Contracts".

RLF1 9376545v.2

I.      The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J.      The Debtors have demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring them to enter into the Agreement, sell the Purchased Assets, and assume and assign the Assigned Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors and their other stakeholders.

K.      The Bidding Procedures were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's-length negotiations between the Debtors, the Petitioning Creditors (as such term is defined in the Bid Procedures Order) and the Committee.

L.      The Debtors and their professionals complied in all material respects with the Bid Procedures Order and the Bidding Procedures.

M.      At the re-opened Auction held on September 11 and 12, 2013, two (2) Qualified Bidders (as such term is defined in the Bid Procedures Order) participated.  At the conclusion of the re-opened Auction, the Debtors determined that Purchaser was the Successful Bidder (as such term is defined in the Bid Procedures Order) for the Purchased Assets.

N.      The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest or best offer received by the Debtors for the Purchased Assets, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' stakeholders and estates, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, and (v) will provide a greater recovery for the Debtors' creditors, stakeholders and other interested parties than would be provided by any other practically available alternative.

- 7 -

O.    The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code and the decisions thereunder. The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code § 363(m) with respect to all of the Purchased Assets. The Agreement was negotiated and entered into in good faith, based upon arm's-length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of, or implicate, Bankruptcy Code § 363(n) to the Agreement or to the consummation of the Transactions and transfer of the Purchased Assets and Assigned Contracts to the Purchaser. The Purchaser is purchasing the Purchased Assets (including the Assigned Contracts) in good faith, is a good faith purchaser within the meaning of Bankruptcy Code § 363(m), is an assignee in good faith of the Assigned Contracts, and is, therefore, together with the Debtors, entitled to the protection of Bankruptcy Code § 363(m). Additionally, the Purchaser has otherwise proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Purchaser complied with the Bidding Procedures, (iii) all consideration to be paid by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed, (iv) the Purchaser has not violated Bankruptcy Code § 363(n) by any action or inaction, and (v) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith.

P.    The Debtors have full corporate, limited liability company and other power and authority to execute the Agreement (and all other documents contemplated thereby) and to consummate the Transactions, and the sale of the Purchased Assets has been duly and validly

authorized by all necessary corporate, limited liability company and other actions on the part of the Debtors.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such Transactions.

Q.    The Debtors have provided sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the Transactions contemplated by the Agreement.  Notwithstanding any requirement for approval or consent by any Person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assigned Contracts).

R.    The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the Transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

S.    The Agreement and Transactions do not constitute a sub rosa chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Agreement and the Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a liquidating plan for the Debtors.

T.    Upon payment of the Purchase Price, the Purchased Assets shall be sold free and clear of any and all liens, Claims (as such term is defined in the Bankruptcy Code), Liabilities, Encumbrances and interests of any kind or nature whatsoever including, without limitation, all liens, mechanics' liens, materialmens' liens, consensual liens, non-consensual liens, statutory liens, hypothecations, Encumbrances, security interests, mortgages, security deeds, deeds of

RLF1 9376545v.2

trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition

or otherwise), charges, instruments, preferences, priorities, security agreements, conditional sales

agreements, title retention contracts, options, judgments, offsets, rights of recovery, rights of pre-

emption, rights of first refusal, other third party rights, Claims for reimbursement, Claims for

contribution, Claims for indemnity, Claims for exoneration, products liability Claims, alter-ego

Claims, successor-in-interest Claims, successor liability Claims, successor employer Claims,

substantial continuation Claims, COBRA Claims, withdrawal liability Claims (including under

any Employee Benefit Plan), environmental Claims, Tax Claims (including Claims for any and

all foreign, federal, state and local Taxes), decrees of any court or foreign or domestic

governmental entity, orders and Claims of any Governmental Body, of any kind or nature

(including (i) any conditional sale or other title retention agreement and any lease having

substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement

in the nature of a security device, and (iii) any Claim based on any theory that the Purchaser is a

successor, successor-in-interest, successor employer or a substantial continuation of the Debtors

or the Debtors' business), reclamation Claims, obligations, Liabilities, demands, and guaranties,

whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured,

perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or

unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether

arising prior to or subsequent to the commencement of the Chapter 11 Case, and whether

imposed by agreement, understanding, Law, equity or otherwise, including Claims otherwise

arising under doctrines of successor liability, successor-in-interest liability, successor employer

liability or substantial continuation liability including, without limitation, that Purchaser is in any

way a successor, successor-in-interest, successor employer or substantial continuation of the Debtors or their businesses (collectively, the "Liens"), other than the Permitted Encumbrances and Assumed Liabilities. Purchaser would not have entered into the Agreement, and would not have agreed to purchase and acquire the Purchased Assets, if the sale of the Purchased Assets was not free and clear of all Liens (other than Permitted Encumbrances and Assumed Liabilities).

U.     Liens (other than the Permitted Encumbrances) shall attach to the net proceeds of the sale of the Purchased Assets actually received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing.

V.     Upon payment of the Purchase Price, the transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and shall vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all Liens (other than the Permitted Encumbrances). Except as specifically provided in the Agreement, the Purchaser shall not assume or become liable for any Liens or Liabilities other than the Permitted Encumbrances and Assumed Liabilities.

W.     The transfer of the Purchased Assets to the Purchaser free and clear of all Liens (other than the Permitted Encumbrances) will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets actually received by the Debtors in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. Upon payment of the Purchase Price, all persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be

- 11 -

forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than the Assumed Liabilities and Permitted Encumbrances) against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets.

X.     The Debtors may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever (other than the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied.  Those (i) holders of Liens in or with respect to the Purchased Assets and (ii) non-debtor parties to the Assigned Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2).  All objections to the Sale Motion have been overruled, adjourned or resolved in accordance with the terms of this Order and as set forth on the record of the Sale Hearing.  Those holders of Liens in or with respect to the Purchased Assets who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, if any, attach to the net proceeds of the sale of the Purchased Assets actually received by the Debtors and ultimately attributable to the property against or in which they claim or may claim any Liens.

Y.     Not selling the Purchased Assets free and clear of all Liens (other than the Permitted Encumbrances and Assumed Liabilities) would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free and clear of all Liens (other than the Permitted Encumbrances and Assumed Liabilities) would be of substantially less value to the Debtors' estates.

Z.     The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and

RLF1 9376545v.2

365(f), in connection with the sale and the assumption and assignment of the Assigned Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Bankruptcy Code § 365(b)(1)(C). The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order are integral to the Agreement and are in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represent the exercise of sound and prudent business judgment by the Debtors. To the extent any objections based upon adequate assurance are adjourned, the Debtors and the Purchaser will demonstrate that they satisfy the requirements of § 365 of the Bankruptcy Code as may be necessary.

AA.    The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary. Except as provided in Section 1.4(n) of the Agreement, the Purchaser shall have sole responsibility for paying all Cure Costs required to assume and assign the Assigned Contracts to the Purchaser.

BB.    The Purchaser has and will be acting in good faith, pursuant to Bankruptcy Code § 363(m), at all times including in closing the Transactions and at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

CC.    The Transactions do not amount to or constitute a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors or the Debtors' estates, there is no continuity of enterprise between the Purchaser and the Debtors or the Debtors' estates, the Purchaser is not a continuation or substantial continuation of the Debtors or their estates, and the Purchaser is not a successor, successor employer or successor-in-interest to the Debtors or their estates.

- 13 -

DD.    The total consideration provided by the Purchaser for the Purchased Assets was the highest or best offer received by the Debtors for the Purchased Assets, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

EE. Time is of the essence in consummating the sale.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

FF.    At and effective as of the Closing, the Purchaser shall assume sole responsibility for paying and satisfying the Assumed Liabilities as provided in the Agreement.  For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Liens upon payment of the Purchase Price) nor in the Agreement shall be construed to mean that the Purchaser is not assuming from the Debtors and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities as provided in the Agreement. After the Closing, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities.  The Purchaser shall have no obligations or responsibility whatsoever with respect to any Liabilities of the Debtors other than the Assumed Liabilities.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is granted in its entirety, and the

- 14 -

RLF1 9376545v.2

Agreement and the provisions thereof are approved in their entirety, subject to the terms and conditions contained herein.

2.    All objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion are resolved or adjourned in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, adjourned or settled, it is overruled and denied on the merits.

3.    Notice of the Sale Motion, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, the Transactions, and the assumption and assignment of the Assigned Contracts was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

4.    The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the Transactions be, and hereby are, authorized and approved in all respects.

5.    The Purchaser's Successful Bid is comprised of (a) $125,000,000 in cash (the "Cash Consideration"), (b) $10,000,000 to be paid either (i) through the issuance by the Purchaser of the Purchaser Notes, or (ii) in cash (the "Additional Cash Consideration"), and (c) the assumption of the Assumed Liabilities.  Pursuant to the Bid Procedures, the Purchaser delivered to the Escrow Holder the Good Faith Deposit in the cash amount equal to $9,500,000 to be held in the Good Faith Deposit Escrow Account pending completion of a Purchase Price adjustment based on the Final Working Capital Statement as described more particularly in Section 2.2 of the Agreement.  Notwithstanding anything to the contrary in the Agreement, if the Purchaser elects to issue the Purchaser Notes (instead of the Additional Cash Consideration) (the

"<u>Note Election</u>"), then the Purchaser Notes in the face amount of $9,500,000 shall replace the

$9,500,000 of cash held in the Good Faith Deposit Escrow Account.  The Escrow Holder shall

hold the Purchaser Notes deposited into the Good Faith Deposit Escrow Account on the same

terms and conditions as it held the Good Faith Deposit.  Notwithstanding anything to the

contrary in the Agreement, (A)(1) the Purchaser shall be entitled to receive all interest accruing

on the Good Faith Deposit through the Closing, and (2) all interest accruing on the Good Faith

Deposit Escrow Account from and after the Closing shall be allocated and paid, on a *pro rata*

basis, to the party entitled to receive the cash or Purchaser Notes (as applicable) in the Good

Faith Deposit Escrow Account following completion of the Purchase Price adjustment pursuant

to Section 2.2 of the Agreement, (B) the Purchaser's right to purchase or have a third party

purchase the Purchaser Notes after the Closing (as contemplated by Section 2.1(a) of the
*or otherwise released to the Prepetition First Lien Agents*
Agreement) shall terminate when the Purchaser Notes are released from escrow) following

completion of the Purchase Price adjustment pursuant to Section 2.2 of the Agreement, and (C)

in the event Purchaser elects to issue the Purchaser Notes (instead of the Additional Cash

Consideration), Sellers shall be deemed to have agreed that any Purchaser Notes returned or

delivered to the Purchaser pursuant to Section 2.2(b)(ii) of the Agreement may be cancelled by

Purchaser in Purchaser's sole discretion.  The Debtors shall promptly provide to counsel to the
*and Yucaipa*
Prepetition First Lien Agents any written notices or correspondence relating to the Good Faith

Deposit and Net Working Capital, including, without limitation, a copy of the Final Working
*consult*
Capital Statement.  The Debtors shall (i) ~~confer in good faith~~ with the Prepetition First Lien

Agents regarding ~~any such notices or correspondence relating to~~ the Good Faith Deposit and Net

Working Capital Shortfall, and (ii) not agree to release from escrow the Good Faith Deposit to

- 16 -

pay the Working Capital Shortfall, if any, without the prior written consent of the Prepetition

First Lien Agents or further order of this Court.

6.      The sale of the Purchased Assets and the consideration provided by the Purchaser

under the Agreement are fair and reasonable and shall be deemed for all purposes to constitute a

transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and

any other applicable Law.

7.      The Purchaser is hereby granted and is entitled to all of the protections provided

to a good faith purchaser under Bankruptcy Code § 363(m), including, without limitation, with

respect to all of the Transactions (part of which includes the transfer of the Assigned Contracts as

part of the sale of the Purchased Assets pursuant to Bankruptcy Code § 365 and this Order).

8.      The Debtors shall be, and hereby are, authorized and directed to fully assume,

perform under, consummate, and implement the terms of the Agreement together with any and

all additional instruments and documents that may be necessary or desirable in connection with

implementing and effectuating the terms of the Agreement, this Order, and/or the sale of the

Purchased Assets including, without limitation, bills of sale, certificates, deeds, assignments, and

other instruments of transfer, and to take all further actions as may reasonably be requested by

the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to

the Purchaser, or reducing to possession, any or all of the Purchased Assets or Assumed

Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as

contemplated by the Agreement, without any further corporate, limited liability company, or

other action or orders of this Court.

9.      The Debtors and each other person or entity having duties or responsibilities

under the Agreement, any agreements or instruments related thereto or this Order, and their

RLF1 9376545v.2

respective directors, officers, employees, members, managers, agents, representatives, and attorneys, are authorized, directed and empowered, subject to the terms and conditions contained in the Agreement and this Order, to carry out all of the provisions of the Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement and any related agreements or instruments; to take any and all actions contemplated by the Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, quitclaim deeds, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or instruments, this Order and the Transactions, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, managers, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of each Debtor (or any comparable officer) shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Body any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Transactions and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all

- 18 -

applicable Governmental Bodies or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate Laws of the State of Delaware and all other applicable business, corporation, limited liability company, trust, and other Laws of the applicable Governmental Bodies with respect to the implementation and consummation of the Agreement, any related agreements or instruments, this Order, and the Transactions.

10.    Effective as of the Closing, (a) upon payment of the Purchase Price, the sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Liens of any kind (other than the Permitted Encumbrances and Assumed Liabilities) pursuant to Bankruptcy Code § 363(f), and (b) the assumption of the Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation and assignment of all Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

11.    The sale of the Purchased Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

12.    At the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), 363(f) and 365, to sell the Purchased Assets and to assume and assign the Assigned Contracts to the Purchaser.  The Debtors hereby instruct, and this Court hereby authorizes and directs, the Purchaser and the Escrow Holder to

RLF1 9376545v.2

remit directly (A) to the Prepetition First Lien Agents and (B) solely as it relates to any Disputed

Pro Rata Share (as defined below), ⌐ to the Disputed Obligations Escrow (as defined below):

(a)    on the Closing Date, (i) $115,500,000, less the Purchased Cash Deficiency and

less the cash necessary to fund a wind-down budget (in a form and ~~substance~~ amount

agreed to by the Debtors (following consultation with ⌐ Yucaipa and the Committee) and the

Prepetition First Lien Agents or approved by order of the U.S. Bankruptcy Court;

the "<u>Wind Down Budget</u>"); and (ii) (x) any Additional Cash Consideration; or (y)

in the event that the Purchaser elects to exercise the Note Election (and does not

pay the Additional Cash Consideration), then $500,000 in face amount of the

Purchaser Notes and the entirety of the cash in the Good Faith Deposit Escrow

Account; and

(b)    upon resolution of any dispute regarding the Final Working Capital Statement

(pursuant to Section 2.2 of the Agreement), the portion of the Good Faith Deposit

(if any) that would otherwise be required to be released to the Debtors (Sections

12(a)(i) and (ii) and 12(b) hereof, collectively, the "<u>Sale Proceeds</u>").

13. The Sale Proceeds shall be used (i) first, to indefeasibly pay in full in cash all

obligations owing under the DIP Credit Agreement (the "<u>DIP Payment</u>"), and (ii) second, to

provide for an indefeasible payment to the Prepetition First Lien Agents on account of the

Obligations (as defined in the Prepetition First Lien Credit Agreement),[6] such payment to be

distributed in accordance with the terms of the Prepetition First Lien Credit Agreement and

---

[6]    "Prepetition First Lien Credit Agreement" means the Amended and Restated First Lien Secured Super Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement, dated May 15, 2007, by and among, *inter alia*, Allied Systems Holdings, Inc. and Allied Systems Ltd. (L.P.) as borrowers (the "<u>Borrowers</u>"), certain subsidiaries of the Borrowers as guarantors, the lenders party thereto from time to time (the "<u>Prepetition First Lien Lenders</u>"), and CIT, as administrative and collateral agent (as amended, modified, supplemented or restated from time to time).

related credit documents, including the distribution of a Pro Rata Share (as defined in the Prepetition First Lien Credit Agreement) of the payment to the applicable Prepetition First Lien Lender. Notwithstanding the foregoing, the Sale Proceeds allocable to any Pro Rata Share of the Obligations (based on the amount of the Obligations set forth in the register maintained by the Prepetition First Lien Agents as of the Petition Date (as the same may be modified by agreement of Yucaipa and the Prepetition First Lien Agents or in accordance with a final order of a court of competent jurisdiction) regardless of any defects in, challenges to or reduction in such holdings that may be asserted or claimed, the "Disputed Pro Rata Share") that are subject to a pending filed objection or challenge (including, without limitation, with respect to the applicable Prepetition First Lien Lender's status as a "Lender," any dispute as to the amount of the Obligations held, or any claim for subordination) (the "Disputed First Lien Obligations"), shall be paid directly at Closing by the Purchaser into the Disputed Obligations Escrow (as defined below). For avoidance of doubt, the Obligations held by Yucaipa are ⌐currently Disputed First Lien Obligations, and Yucaipa's Disputed Pro Rata Share of the Obligations (and the Sale Proceeds distributable to the Prepetition First Lien Agents and other Prepetition First Lien Lenders) is equal to 55.2% thereof as of the date of this Order. Concurrently with any distribution of the Sale Proceeds to the Prepetition First Lien Agents or the Debtors (whether at the Closing or otherwise), the Purchaser shall deposit such Disputed Pro Rata Share (and any other Sale Proceeds allocable to any other Disputed First Lien Obligations) with an independent, third party escrow agent reasonably acceptable to Yucaipa and the Prepetition First Lien Agents and pursuant to an escrow agreement having terms and conditions reasonably acceptable to Yucaipa and the Prepetition First Lien Agents (the "Disputed Obligations Escrow"). The fees and expenses of the Disputed Obligations Escrow shall be paid by the Prepetition First Lien Agents

(as an expense of Prepetition First Lien Agents under the Prepetition First Lien Credit Agreement) or through the Wind-Down Budget. The Sale Proceeds (including the applicable Disputed Pro Rata Share of any and all non-cash Sale Proceeds) held in such Disputed Obligations Escrow are referred to as the "Reserved Funds." Unless otherwise agreed by all parties to such dispute, the Reserved Funds shall be distributed to the holder of applicable Disputed First Lien Obligations upon the entry of a final non-appealable order of a court of competent jurisdiction (an "Allowance Order") finding that such Disputed First Lien Obligations constitute valid and enforceable First Lien Obligations ("Allowed First Lien Obligations") to the extent provided in the Allowance Order. If any Disputed First Lien Obligation is subordinated, disallowed or otherwise determined by a final non-appealable order of a court of competent jurisdiction to not constitute Allowed First Lien Obligations, then the Reserved Funds allocable to such portion of the Disputed First Lien Obligations shall be distributed to the holders of Allowed First Lien Obligations other than the applicable holder of such Disputed First Lien Obligations pursuant to the terms of the Prepetition First Lien Credit Agreement and the remainder (if any) promptly distributed to Yucaipa. All payments made to the Prepetition First Lien Agents and Prepetition First Lien Lenders (including any Reserved Funds deposited into the Disputed Obligations Escrow) pursuant to this Order shall not be subject to disgorgement for any reason.

14.    Any Sale Proceeds left in the Debtors' estates to fund the Wind-Down Budget shall: (i) constitute cash collateral of the Prepetition First Lien ~~Agents~~ Lenders, (ii) be maintained by the Debtors in a segregated account, and (iii) only be used to fund the specific items and in the amounts set forth in Wind-Down Budget. In the event that there are Sale Proceeds left in the Debtors' estates to fund the Wind-Down Budget that exceed the Debtors' good faith estimate of

the estates' wind-down expenses ("Surplus Cash"), then the Debtors shall promptly distribute

Surplus Cash *(a)* to the Prepetition First Lien Agents for distribution under the First Lien Credit

Agreement *and (b) Disputed Obligations Escrow* ~~subject only to the limitations set forth above~~ with respect to First Lien Lenders

holding Disputed First Lien Obligations. Any Sale Proceeds left in the Debtors' estates to fund *, and Disputed Obligations Escrow,*

the Wind-Down Budget shall be paid to the Prepetition First Lien Agents prior to the entry of *as applicable,*

any order converting these Cases to chapter 7, appointing a chapter 11 trustee or closing these

Chapter 11 Case, unless the Wind Down Budget contemplates otherwise.

15.    Upon payment of the Purchase Price, the sale of the Purchased Assets shall vest

the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and

clear of any and all Liens (other than the Permitted Encumbrances and Assumed Liabilities) with

all such Liens to attach only to the net proceeds of the sale of the Purchased Assets actually

received by the Debtors with the same priority, validity, force, and effect, if any, as they now

have in or against the Purchased Assets, subject to all claims and defenses the Debtors may

possess with respect thereto.    Following the Closing Date, no holder of any Liens in the

Purchased Assets (other than the Permitted Encumbrances and Assumed Liabilities) shall

interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to

such Liens, or any actions that the Debtors may take in the Chapter 11 Case.    Upon payment of

the Purchase Price, all Persons having Liens of any kind or nature whatsoever against or in any

of the Debtors or the Purchased Assets are forever barred, estopped and permanently enjoined

from pursuing or asserting any such Liens (other than the Permitted Encumbrances and the

Assumed Liabilities) against the Purchaser, any of Purchaser's assets, property, successors or

assigns, or the Purchased Assets.    No Person shall take any action to prevent, interfere with or

otherwise enjoin consummation of the Transactions.

- 23 -

16.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens (other than the Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.   However, the Debtors and the Purchaser, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all actions and to execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary, desirable or appropriate to implement and effectuate the terms of the Agreement and this Order.

17.     On the Closing Date, the Purchaser and the Debtors at their own expense are authorized to (a) execute such documents and take all other actions as may be necessary to release Liens (other than the Permitted Encumbrances) filed against the Purchased Assets, if any, as may have been recorded or may otherwise exist, and (b) file a copy of this Order in the appropriate real estate records, the secretary of state records and any other filing location selected by the Purchaser or the Debtors and, once filed, this Order shall constitute conclusive evidence of the release of all Liens (other than Permitted Encumbrances) from the Purchased Assets.  For the avoidance of doubt, if any Person that has filed financing statements, mortgages or other documents or agreements evidencing any Liens in or against the Purchased Assets (other than the Permitted Encumbrances) shall not have delivered to the Debtors' counsel or the Escrow Holder prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, terminations statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the Purchased Assets, the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on

- 24 -

behalf of the Person with respect to such Purchased Assets at Closing, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets after the Closing.

18.     To the greatest extent available under applicable Law, (a) the Purchaser shall be authorized, as of the Closing Date, to operate under any license, Permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Body relating to the Purchased Assets (collectively, the "Permits"), (b) all such Permits are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date, and (c) each Governmental Body that has issued or granted a Permit and who did not object to the sale of the Purchased Assets shall be deemed to have consented to the transfer of such Permit to the Purchaser as of the Closing Date.

19.     All of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale, deeds, or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

20.     Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor, successor-in-interest, successor employer, substantial continuation, or otherwise, for any Liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the

RLF1 9376545v.2

Transactions, or any Liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the Transactions, which Liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor, successor-in-interest, successor employer, substantial continuation, or otherwise, against the Purchaser or any affiliate of the Purchaser.

21.    All Persons presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

22.    Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assigned Contracts and the sale and assignment of such agreements and unexpired leases to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365.

23.    The Assigned Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Purchaser at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the payment of the Cure Costs.

24.    Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and to each Assigned Contract. The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

25.    Pursuant to Bankruptcy Code §§ 365(b)(l)(A) and (B), except as contemplated by Section 1.4(n) of the Agreement, the Purchaser shall promptly pay at Closing or cause to be paid

at Closing to the non-debtor parties to any Assigned Contracts the requisite Cure Costs, if any,

set forth on the Contract Notice filed with the Court, except to the extent that a Cure Cost was

amended on the record of the Sale Hearing, following the assumption and assignment thereof.

The Cure Costs are hereby fixed at the amounts set forth on the Contract Notice, or the amounts

set forth on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the

Assigned Contracts are forever bound by such Cure Costs.

26.     All defaults or other obligations under the Assigned Contracts arising prior to the

Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising

rates, or any other default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall

be deemed cured by payment of the Cure Costs.

27.     Any provision in any Assigned Contract that purports to declare a breach, default,

or payment right as a result of an assignment or a change of control in respect of the Debtors is

unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to

payment of the appropriate Cure Costs, if any.  No sections or provisions of any Assigned

Contract that purport to provide for additional payments, penalties, charges, or other financial

accommodations in favor of the non-debtor party to the Assigned Contract shall have any force

and effect with respect to the Transactions and assignments authorized by this Order, and such

provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f)

and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any

Assigned Contract pursuant to the terms of the Agreement shall in any respect constitute a

default under any Assigned Contract. The non-debtor party to each Assigned Contract shall be

deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the

Purchaser shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract

RLF1 9376545v.2

as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

28.    The Purchaser has satisfied all requirements under Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(b) to provide adequate assurance of future performance under the Assigned Contracts.

29.    The Debtors and their estates shall be relieved of any liability for any breach of any of the Assigned Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

30.    Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or Claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities being assumed by the Purchaser under the Agreement.

31.    Each and every federal, state, and local governmental agency or department (including each Governmental Body) is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Agreement and this Order.  This Order and the Agreement shall govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets, and each such entity is

RLF1 9376545v.2

hereby directed to accept this Order for recordation as conclusive evidence of the free, clear, and unencumbered transfer of title to the Purchased Assets conveyed to Purchaser pursuant to the Agreement.

32.    To the extent permitted by Bankruptcy Code § 525, no Governmental Body may revoke or suspend any Permit relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this Chapter 11 Case or the consummation of the Transactions.

33.    The Purchaser has not assumed and is not otherwise obligated for any of the Debtors' Liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets as set forth in the Agreement. Consequently, upon payment of the Purchase Price, all Persons, Governmental Units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) and all holders of Liens (other than the Permitted Encumbrances) based upon or arising out of Liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets to recover any Liens or on account of any Liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All Persons holding or asserting any Liens in or relating to the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or any cause of action against the Purchaser or the Purchased Assets for any Liability associated with the Excluded Assets.

34.    The Purchaser is not a "successor", "successor-in-interest", "successor employer" or "substantial continuation" to or of the Debtors or their estates by reason of any theory of Law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales Law, successor liability, successor-in-interest liability,

RLF1 9376545v.2

successor employer liability, substantial continuation liability, or similar liability except to the extent expressly included in the Assumed Liabilities or provided in the Agreement or contractual or statutory obligations the Purchaser had or has independent of the sale. Neither the purchase of the Purchased Assets by the Purchaser, nor the facts that the Purchaser is using any of the Purchased Assets previously operated by the Debtors, employs any individuals who were previously employed by the Debtors, operates the same type of business previously operated by the Debtors, or has prior notice of a claim against the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor, successor-in-interest, successor employer or substantial continuation in any respect to the Debtors' business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, COBRA, Tax, labor, employment, environmental, or other Laws, rule or regulation (including, without limitation, filing requirements under any such Laws, rules or regulations), or under any products liability Law or doctrine with respect to the Debtors' liability under such Law, rule or regulation or doctrine, except to the extent expressly included in the Assumed Liabilities or provided in the Agreement or contractual or statutory obligations the Purchaser had or has independent of the sale.

35.     For the avoidance of doubt and with the exception of contractual or statutory obligations the Purchaser had or has independent of the sale, upon payment of the Purchase Price, transfer of title and possession of the Purchased Assets shall be free and clear of any Liabilities and other Liens pursuant to any successor, successor-in-interest, successor employer or substantial continuation theory, including the following: (a) any employment or labor agreements, (b) all deeds of trust, security deeds, mortgages, liens, and security interests, (c) any pension or medical benefit plan of the Debtors, compensation or other employee benefit plan of the Debtors, welfare, agreements, practices and programs, (d) any other employee, workers' compensation,

RLF1 9376545v.2

occupational disease or unemployment or temporary disability related Claim, including, without limitation, Claims and other Liens that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination Laws, (xi) state unemployment compensation Laws or any other similar state Laws, or (xii) any other state or federal benefits or Claims and other Liens relating to any employment with the Debtors or any predecessors, (e) environmental or other Claims and other Liens arising from existing conditions on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other state or federal statute, (f) any bulk sales or similar Law, (g) any Tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (h) any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.

36. Except to the extent expressly included in the Assumed Liabilities or provided in the Agreement, the Purchaser and its affiliates shall have no liability, obligation, or responsibility under the WARN Act or the Comprehensive Environmental Response, Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental Law by

RLF1 9376545v.2

virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

37.    Except to the extent expressly included in the Assumed Liabilities, pursuant to Bankruptcy Code §§ 105 and 363, all Persons including, but not limited to, the Debtors, the Committee, all debt holders, equity security holders, the Debtors' employees or former employees, Governmental Bodies, lenders, parties to or beneficiaries under any Seller Plan, trade and other creditors asserting or holding a Lien of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets (other than the Permitted Encumbrances and Assumed Liabilities), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien, including assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award, decree, or order, against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, managers, officers, directors, attorneys, employees, partners, affiliates, financial advisors, and representatives (each of the foregoing in its individual capacity), or the Purchased Assets.

38.    Without limiting the generality of the foregoing, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state Law or otherwise. This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases,

- 32 -

death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation Claims filed or to be filed, or reopenings of those Claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

39.     Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors and does not reduce in any way the Purchase Price.

40.     Nothing contained herein or in the Agreement shall affect any rights LSREF2 may have in connection with the security deposit or the letter of credit proceeds currently in the possession of LSREF2 in connection with the Agreement of Lease dated October 19, 2007 for the Debtors' headquarters building in Atlanta, Georgia.

41.     With respect to the property in Ellis County, Texas, any valid, undisputed 2013 ad valorem taxes on the real and personal property will be paid at closing if such date is on or before January 31, 2014.  If closing has not occurred by that date, the Debtors shall pay any valid, undisputed 2013 taxes as billed on or before January 31, 2014.  The 2013 taxes shall be paid (if valid and undisputed) based upon the tax office records and, pursuant to 11 U.S.C. § 503(b)(1)(D) no administrative expense claim or request for payment need be filed for these taxes to be paid.  Any disputed ad valorem taxes on the real and personal property will be

RLF1 9376545v.2

addressed by a court of competent jurisdiction and paid as may be required by the disposition of such dispute.

42.    Notwithstanding anything to the contrary in the Agreement or in this Order approving the sale of assets of the Debtors' Michigan businesses, this Order will not enjoin, suspend, or restrain the assessment, levy or collection of unemployment taxes under Michigan state law and does not constitute a declaratory judgment with respect to any employer's liability for taxes under Michigan state law.  This Order is without prejudice to any rights the Purchaser, the Debtors or any of their successors-in-interest may have to challenge the assessment, levy or collection of unemployment taxes or any unemployment experience rating assessed by the Michigan Unemployment Insurance Agency.

43.    The Debtors' sale of claims against and alleged rights to receive payment from (the "Alleged Claims") any one or more of General Motors Holdings LLC, General Motors LLC, and General Motors of Canada Limited (collectively, "GM"), including, without limitation, alleged claims for "Transportation Services Charges" in the amounts of $2,755,404.35 and $1,324,682.84 listed in Debtors' Schedule B21 (the "Alleged Accounts Receivable"), is expressly subject to any and all of GM's valid defenses and rights, including, but not limited to, GM's rights of recoupment and setoff under Michigan law and GM's claims and defenses asserted in United States District Court for the Eastern District of Michigan (the "Michigan Court") Case No. 11-11162 (the "Michigan Case").  Purchaser shall not assign, sell, or otherwise transfer any right or interest in the Alleged Claims or Alleged Accounts Receivable without the prior written consent of GM and any such assignment, sale, or transfer without GM's prior written consent is void.  In the event that Purchaser seeks to pursue or enforce the Alleged Claims, the Purchaser and Debtors agree and consent to exclusive jurisdiction and venue in the

- 34 -

Michigan Court and that any further litigation relating to the Alleged Claims, Alleged Accounts Receivable, or GM's related defenses shall be exclusively in the Michigan Case, except that if the Michigan Court cannot exercise jurisdiction and venue, Purchaser and Debtors agree and consent to exclusive venue and jurisdiction in a court of competent jurisdiction located in Oakland County, Michigan. Further, in the event that Purchaser seeks to pursue or enforce the Alleged Claims, Purchaser and Debtors consent to any request by GM to the U.S. Bankruptcy Court for relief from the automatic stay to litigate in the Michigan Court or another Michigan court any and all claims relating to the Alleged Claims, Alleged Accounts Receivable, and GM's related defenses and damages claims, including, without limitation, GM's claims for damages relating to the alleged breach by Allied Systems, Ltd. (L.P.) ("Allied Systems") of its obligations under the Service Contract for Logistics Services (the "Service Contract") between GM and Allied Systems. Nothing contained in this order or any prior order of this U.S. Bankruptcy Court shall affect or otherwise impair to the extent valid (i) any setoff or recoupment rights or other defenses of GM, or the priority of any setoff or recoupment claims, or any rights attendant thereto, including, without limitation, GM's rights under the Service Contract, and (ii) GM's defenses to the existence and alleged amount of the Alleged Claims and Alleged Accounts Receivable including, without limitation, (a) on account of GM processing a $100 million debit on May 20, 2011 to recoup and/or set off a portion of GM's damages caused by Allied Systems' alleged breach of the Service Contract and (b) on account of the Stipulation as to Amounts of Certain Damages Claims in the Michigan Case.

44.    The failure specifically to include any particular provisions of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Debtors, and the Purchaser that the

RLF1 9376545v.2

Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

45.    Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the United States' enforcement of any liability under environmental Laws against the Purchaser or other future owner or operator as the current owner or operator of the Purchased Assets from and after the Closing Date.

46.    No bulk sale Law or any similar Law of any state or other jurisdiction shall apply in any way to the sale and the Transactions contemplated by the Agreement.

47.    ⌐ Except as otherwise provided herein, ⌐ Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and the Purchaser thereunder.

48.    This Order and the Agreement shall be binding upon and govern the acts of all Persons including, without limitation, the Debtors, the Debtors' estates, the Purchaser, and each of their respective directors, officers, employees, agents, successors, and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates, any trustee appointed in a Chapter 7 case if this Chapter 11 Case is converted from Chapter 11, any Chapter 11 plan agent or trustee, liquidating agent or trustee, or any other agent or trustee charged with administering any assets of the Debtors or their estates, all creditors of each Debtor (whether known or unknown), holders of Liens in or with respect to the Purchased Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

49.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in this Chapter 11 Case, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

50.     The stays imposed by Bankruptcy Rules 6004(h), 6006(d), and 7062 are hereby waived, and this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement.  In the absence of any Person obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the Transactions if this Order or any authorization contained herein is reversed or modified on appeal.

51.     The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order, and the stay imposed by Bankruptcy Rule 4001(a)(3) is hereby waived with respect thereto.

52.     This Court shall retain jurisdiction to enforce the terms and provisions of this Order and the Agreement (including, without limitation, all documents and instruments executed in connection with the Closing) in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the

- 37 -

Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens (except Permitted Encumbrances and Assumed Liabilities) and the payment of the Sale Proceeds to the Prepetition First Lien Agents.

53.     As soon as practicable after the Closing, the Debtors shall file a report of sale in accordance with Bankruptcy Rule 6004(f)(1).

54.     The definition of the term "Current Liabilities" contained in the Agreement is hereby amended and restated to provide as follows:

"**Current Liabilities**" means the following Assumed Liabilities: (a) amounts owed to third parties arising in the Ordinary Course of Business after the Petition Date (and arising on or prior to the Closing Date), which are not past due more than thirty (30) days as of the Closing Date, and which are entitled to priority status under Section 503(b) of the Bankruptcy Code or under the CCAA, (b) all accrued but unpaid base salary or wages due to any Employees (excluding all other types of compensation, health, welfare and pension benefits and bonuses, severance and incentive compensation) and all accrued but unpaid vacation and paid time off due to any Employees as of the Closing Date, (c) all cargo claims arising after the Petition Date under Sellers' customer Contracts and accrued as of the Closing Date, (d) amounts owed pursuant to the Retention Incentive Agreements as of the Closing Date, and (e) all accrued but unpaid health, welfare and pension benefits and contributions owed to or in respect of Employees of Allied Canada as of the Closing Date, which health, welfare and pension benefits are not due and payable at or prior to the Closing, in an aggregate amount that does not exceed $450,000 (the "Assumed HWP Benefits"), in each case determined in accordance with GAAP.

- 38 -

55.    Pursuant to Sections 1.3(f) and 1.3(i) of the Agreement, the Assumed Liabilities shall include the Assumed HWP Benefits.

56.    Pursuant to Section 6.1 of the Agreement, the Employment Offering Purchaser Entity has agreed to assume any and all obligations and responsibilities of Allied Canada as a result of the application of Section 44 of the Canada Labour Code.

Dated: September 17, 2013
      Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

- 39 -